IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INDEMNITY COMPANY, <br> **Plaintiff,** <br><br> VS. <br><br> NEXT INSURANCE US COMPANY, <br> **Defendant.** | § § § § § § § § § | Civil Action No.: 5:24-cv-00917 |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff, THE CINCINNATI INDEMNITY COMPANY (hereinafter "Cincinnati" or the "Plaintiff"), in the above-entitled and numbered cause, and files its Original Complaint for Declaratory Relief pursuant to the FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§2201 *et seq.* and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE. Cincinnati seeks a declaration with respect to the rights and/or obligations under a commercial general liability insurance policy issued by Defendant, Next Insurance US Company ("Next"). Specifically, Cincinnati seeks a declaratory judgment with respect to Next's obligation to defend Cincinnati's insured, Casa Mechanical Services Ltd. ("Casa" or the "Insured"), as an additional insured under a policy issued by Next, in a pending liability lawsuit entitled: Cause No.: 2023CI03964; *Ana Lopez Cardona v. Casa Mechanical Services, Ltd. and Ashton San Antonio Residential, LLC*; in the 407th Judicial District Court of Bexar County, Texas (the "Underlying Lawsuit"). The Underlying Lawsuit stems from bodily injuries sustained by the Underlying Plaintiff, Ana Lopez Cardona ("Cardona") on or about February 12, 2022, while working as an independent contractor for Casa on a residential construction site. Cincinnati contends that Next owes a duty to defend

Casa pursuant to: (1) an insurance policy issued by Next to its insured-subcontractor, Carlos Alberto Garcia Salazar ("Salazar"); and (2) a subcontract agreement entered into by Salazar. In support of Cincinnati's Original Complaint for Declaratory Relief, Cincinnati would respectfully show the Court as follows:

## I.
## PARTIES

1. Plaintiff Cincinnati is a foreign insurance company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Ohio, and doing business in the State of Texas. Cincinnati is a citizen of the State of Ohio.

2. Defendant, Next is a foreign insurance company with its principal place of business and headquarters in the state of California. Next is a citizen of the State of California. Next's registered agent is the Corporation Service Company, who can be served at an office located at 1900 W Littleton Blvd, Littleton, CO 80120. Cincinnati requests issuance of citation at this time.

## II.
## JURISDICTION AND VENUE

3. This declaratory judgment action is brought under 28 U.S.C., §§ 2201 *et seq.* and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE, for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully set forth. The jurisdiction of this Court is proper under 28 U.S.C. § 1332, based upon the diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. The damages at issue in the Underlying Lawsuit are between $250,000 – $1,000,000.

4. Venue is properly maintained in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2), as the judicial district is where the subject of this suit is located, and where a substantial part of the

events giving rise to this action for declaratory relief occurred.

### III.
### FACTUAL BACKGROUND AND THE UNDERLYING LAWSUIT

5.      On or around February 27, 2023, Cardona filed her Original Petition asserting claims against Casa in the Underlying Lawsuit. Cardona asserted the following causes of action against Casa, namely: claims of negligence, vicarious liability, and premises liability. **Exhibit A**. In the suit, Cardona seeks medical expenses, lost wages, loss of the ability to perform household duties, past and future pain and suffering, past and future mental pain and anguish, impairment, disfigurement, and punitive damages. Cardona also seeks damages in the amount of $250,000 – $1,000,000.

6.      The Underlying Lawsuit stems from bodily injuries sustained by Cardona resulting from a fall at a residential construction site located in the Front Gate a Fair Oaks Ranch in Boerne, Bexar County Texas. Cardona claims that she was working on the second floor of a home that was under construction, when she fell to the first floor. In pertinent part, the Underlying Lawsuit alleges that Cardona was employed as an independent contractor for Casa. **Exhibit A**. Cardona's Original Petition states in part the following:

**********

> 9.      Plaintiff's claims stem from injuries suffered on or about February 12, 2022 at a residential construction site located in the Front Gate at Fair Oaks Ranch by Ashton Woods subdivision in Boerne, Bexar County, Texas. Plaintiff was employed as an independent contractor for Defendant CASA MECHANICAL and brought to a residential jobsite to work for Defendant ASHTON WOODS.    …
>
> 10.     On the day of the incident, Plaintiff was brought to the jobsite by CASA MECHANICAL's agent and/or employee, Carlos Garcia. She was required to work on the second floor of the residential construction project without any fall protection and/or temporary railing in place. Defendant ASHTON WOODS did not ensure the framing and guardrails were completed on the second floor before instructing Defendant CASA MECHANICAL's crew to begin their work. As Plaintiff was removing trash from the second floor and tossing it down to the first floor, suddenly and without warning, Plaintiff fell over the edge of the second-floor balcony that was unguarded, landing on the first floor. As a result of the fall, Plaintiff sustained severe injuries to her right hand and right foot.

11.     Upon information and belief and at all times relevant to this incident, Defendants had control over the residential worksite and were responsible for establishing fall protection and safety requirements and failed to do so. Defendants controlled the means, methods and details of Plaintiff's work and asserted control over the injury producing activity that caused Plaintiff's fall and subsequent substantial injuries. For these reasons, Plaintiff makes a general negligence claim against Defendants ASHTON WOODS and CASA MECHANICAL.
…

13.     As an alternative theory of recovery and without waiving the foregoing, Plaintiff alleges that Defendant ASHTON WOODS negligently hired subcontractors for the residential construction project where Plaintiff's injuries occurred. Defendant ASHTON WOODS failed to use ordinary care in selecting its subcontractors by failing to conduct an inquiry into the subcontractors' qualifications prior to contracting with them. As a result of Defendant ASHTON WOODS' negligent hiring of subcontractors, Plaintiff sustained serious personal injuries.

14.     As an alternative theory of recovery and without waiving the foregoing, Plaintiff maintains that she was on Defendant ASHTON WOODS' premises as an invitee since Plaintiff was brought to the residential premises in order to improve Defendant ASHTON WOODS' property. At all times relevant to this suit, Defendant ASHTON WOODS had control over the premises and was the possessor of the premises, and as such, owed a duty to Plaintiff to maintain the premises in a safe manner. Plaintiff's injuries were the result of Defendant ASHTON WOODS' breach of that duty and Plaintiff brings this premises liability case against Defendant ASHTON WOODS.

**VICARIOUS LIABILITY**

15.     Plaintiff would show that Defendants, its contractors and subcontractors are jointly and severally liable for the damages and injuries that were caused by the negligence of its employees, agents and representatives. Defendants are liable for the acts or omissions of their subcontractors, employees and agents of Defendants and any persons at the location over whom Defendants retained control. Defendants and subcontractors jointly and severally, had control over the manner, methods and procedures that its employees, agents and representatives used in carrying out assigned duties and the methods used on the premises that caused Plaintiff's injuries.

16.     In addition, Defendants, its contractors and subcontractors jointly and severally owed a duty of care to Plaintiff because of their actual and contractual right of control that arose through its course of dealing on the jobsite where Plaintiff's injury occurred. Defendants and subcontractors jointly and severally were in control of the safety of the premises at the time of the accident and owed a duty to exercise their control in a reasonable manner.

. . .

**PREMISES LIABILITY**

19.     Alternatively, and without waiving the foregoing, while upon premises whose safety and security were under Defendants' control, Plaintiff suffered damages resulting in serious personal injuries. Defendants had a duty to inspect the premises and warn Plaintiff of any dangerous conditions that it knew of or should have known existed. Defendant ASHTON controlled the location by virtue of its ownership of said location and were thus further in control of the safety of the location.

20.     Defendants, its agents, servants, and employees negligently caused or negligently permitted such condition to exist and negligently failed to warn Plaintiff of the condition of the premises, despite the fact that Defendants, its agents, servants, and employees actually knew, or in the exercise or ordinary care, should have known of the existence of the condition and that there was a likelihood of someone being injured as happened to Plaintiff. Defendants knew that Plaintiff

was required to work on the second floor despite their knowledge of the dangerous condition and failed to act reasonably to protect Plaintiff from the known hazard.

21.     Defendants, their agents, servants, and employees had a duty to use ordinary care to protect invitees. Defendants, their agents, servants, and employees breached these duties by failing to take any reasonable steps to address the dangerous conditions that proximately caused Plaintiff's injuries.

. . .

### NEGLIGENCE OF DEFENDANT CASA MECHANICAL SERVICES, LTD.

23.     Plaintiff would show that her damages and injuries were caused by the negligence of Defendant CASA MECHANICAL, its employees, agents, and representatives. Plaintiff would also show that Defendant CASA MECHANICAL owed a duty to Plaintiff, that Defendant breached that duty, and that such breach was a proximate cause of the injury and the resulting damages to Plaintiff. Defendant CASA MECHANICAL, its agents, representatives, and employees were negligent by breaching its duty to Plaintiff in one or more of the following alternative theories of negligence:

. . .

**********

**Exhibit A**, attached hereto.

7.      Per the terms and conditions of a March 5, 2018 Subcontract Agreement entered into between Casa and Salazar (the "Subcontract Agreement"), Salazar agreed to name Casa as an additional insured on Salazar's Commercial General Liability Policy No. NXTLUSEQDY-00-GL issued by Next (the "Next Policy"). **Exhibit B**. Pursuant to the Subcontract Agreement, Salazar also agreed that the Next Policy would provide primary, non-contributory coverage to Casa for ongoing and completed operations for Casa's joint, concurrent, vicarious, and sole liability. **Exhibit B**. The Subcontract Agreement provides the following terms with respect to Salazar – the "Contractor" and Casa identified as "CMS":

**********

…

**11.    Insurance.** Contractor [Salazar] agrees to comply with the following provisions regarding insurance coverage:

a) Contractor [Salazar] shall obtain and at all times during the term of this Contract maintain at its own expense, with insurance companies rated "A-VI" or better by AM Best and acceptable to CMS [Casa], the minimum insurance coverages set forth below.

(1)    *__Commercial General Liability__* insurance shall be written on ISO form CG 00 01 04 13 or equivalent with limits for bodily injury and property damage liability of not less than $1,000,000 each occurrence, $2,000,000 general aggregate and products/completed

        operations coverage which shall include premises/operations liability, independent contractors liability, and broad form contractual liability specifically in support of, but not limited to, the indemnity provisions set forth in this Contract. The policy shall include a waiver of subrogation in favor of CMS [Casa]; will be endorsed to include CMS [Casa] as an Additional Insured for ongoing and completed operations using endorsements equal to or broader than CG 20 10 11 85 or a combination of CG 20 10 04 13 and CG 20 37 04 13; will contain cross-liability and severability of interest coverage; shall state that such insurance is primary to and non-contributory with any other insurance carried by CMS [Casa]; and shall include a per project aggregate endorsement. The additional insurance provisions shall extend coverage for both ongoing and completed operations for the premises owner's concurrent and sole negligence, to the fullest extent allowed by law and not prohibited under Chapter 151 of the Texas Insurance Code. Proof of coverage shall be provided via a certificate of insurance indicating the endorsement form name and number and as necessary the Contractor will provide a copy of the policy or endorsement for review and approval. Contractor [Salazar] shall maintain COL coverage for itself and each additional insured for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least two (2) years after completion of the Work.

    (2)    ***Business Automobile Liability Insurance*** shall be at a limit of not less than $500,000 per occurrence for bodily injury and property damage liability written to cover all owned, hired and non-owned automobiles arising out of the use thereof by or on behalf of the Contractor [Salazar] and its employees. This policy shall include a waiver of subrogation in favor of CMS [Casa], be endorsed to include CMS [Casa] as an Additional Insured, and shall state that such insurance is primary with respect to any insurance carried by CMS [Casa].

…

                            **\*\*\*\*\*\*\*\*\*\***

**Exhibit B**, attached hereto.

    8.    On May 5, 2023, Casa tendered the Underlying Lawsuit to Next for defense and indemnity. Thereafter, on September 22, 2023, in response to Casa's tender to Next for coverage for the allegations asserted in the Underlying Lawsuit, Next issued a denial of coverage letter to Casa. **Exhibit C**. In sum, Next denied coverage to Casa based on the Employer's Liability Exclusion and the Workers' Compensation Exclusion in the Next Policy. Cincinnati contends, however, that Next's denial of coverage is a wrongful denial and that coverage is owed to Casa pursuant to the express terms of the Next Policy and based on the allegations asserted in the Underlying Lawsuit.

    9.    So as to protect Casa's interests given Next's wrongful denial of coverage, Cincinnati has been providing a legal defense to Casa in the Underlying Lawsuit, subject to a reservation of rights, including but no limited to its right to pursue any insurance carrier (e.g.,

Next) owing primary, non-contributory coverage to Casa.

## IV.
## INSURANCE PROVISIONS MADE THE BASIS OF THIS ACTION

**A.    THE CINCINNATI POLICY:**

10.    Cincinnati insures Casa on a named-insured basis under policy number EPP 013 24 53, effective April 1, 2021 to April 1, 2022 ("Cincinnati Policy"). **Exhibit D.** The Cincinnati Policy provides in part, the following express terms with respect to other insurance that the Next Policy is primary, non-contributory to the Cincinnati Policy:

\*\*\*\*\*\*\*\*\*\*

**5.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.    Excess Insurance**

This insurance is excess over:

**(1)**    Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)**    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)**    That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)**    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)**    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

>  **(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.
>
>  **(3)** Any other insurance:
>
>  **(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and
>
>  **(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.
>
> When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
>  **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
>  **(2)** The total of all deductible and self-insured amounts under all that other insurance.
>
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.
>
>  **c.   Method of Sharing**
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.
>
> **********

**Exhibit D**, attached hereto.

    **B.**    **THE NEXT POLICY:**

11. The Next Policy bearing policy number NXTLUSEQDY-00-GL is effective March 16, 2021 to March 16, 2022. The Next Policy lists Casa as an additional insured. The Next Policy

provides a limit of liability of: $1,000,000 for each occurrence. The Next Policy provides in pertinent part:

**********

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM SECTION I - COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.      Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
   **(1)** The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and
   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverage A and B.

The policy contains specific exclusionary language that can limit or preclude coverage. We believe the following exclusions apply:

**2.      Exclusions**

This insurance does not apply to:
. . .
   **d.   Workers' Compensation And Similar Laws** Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   **e.   Employer's Liability** "Bodily injury" to:
   **(1)** An "employee" of the insured arising out of and in the course of:
      **(a)** Employment by the insured; or
      **(b)** Performing duties related to the conduct of the insured's business; or The Policy includes the following Definitions:

**********

**SECTION V – DEFINITIONS**

   **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
   **. . .**
   **5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
   **. . .**
   **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The following exclusions applies to this claim even with Casa Mechanical as an additional insured:

**********

**EXCLUSION – BODILY INJURY TO EMPLOYEES**

The following replaces **SECTION I – COVERAGES, Coverage A Bodily Injury and Property Damages Liability** paragraph **2. Exclusions**, exclusion **e. Employer's liability**

    **e.   Employer's Liability**
        "Bodily Injury" to:

        **(1)**   An "employee" of any insured arising out of and in the course of:

            **a.**   Employment by any insured; or
            **b.**   Performing duties related to the conduct of an insured's business; or

        **(2)**   The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**********

## V.
## BASIS FOR DECLARATORY RELIEF

12. Cincinnati seeks declarations from the Court that: (1) the Next Policy presents a duty for Next to defend Casa in the Underlying Lawsuit; (2) the Next Policy is primary and non-contributory to the Cincinnati Policy; and (3) Next must reimburse Cincinnati for Casa's defense costs from the date the Underlying Lawsuit was tendered to Next—May 5, 2023.

13. Specifically, Cincinnati is of the position that the allegations asserted against Casa triggers a duty for Next to defend Casa in the Underlying Lawsuit based on a strict eight-corners analysis. The allegations asserted in the Underlying Lawsuit clearly allege that the Underlying Plaintiff is an *independent contractor* of Casa and not an "employee" and therefore, neither the Employer's Liability Exclusion nor the Workers' Compensation Exclusion in the Next Policy apply. Moreover, pursuant to the Subcontract Agreement, Cincinnati contends that the coverage afforded to Casa under the Next Policy is primary and non-contributory to the coverage afforded Casa under the Cincinnati Policy. However, due to Next's wrongful denial of coverage, Cincinnati

has been defending Casa in the Underlying Lawsuit. As such, Cincinnati respectfully requests the Court declare Next reimburse Cincinnati for the Plaintiff's payments for Casa's reasonable and necessary defense costs (fees and expenses) from the date of tender—May 5, 2023 to the present date. For all of the above reasons, an actual controversy exists between the parties.

## VI.
## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, The Cincinnati Indemnity Company prays for judgment as follows:

(1) A judgment declaring that the Next Policy provides a duty to defend Casa for the damages being sought in the Underlying Lawsuit;

(2) A judgment declaring the Next Policy is primary and non-contributory to the Cincinnati Policy;

(3) A judgment declaring that Next must reimburse Cincinnati for Casa's reasonable and necessary defense costs (fees and expenses) from the date of tender—May 5, 2023 to the present date; and

(4) A judgment for such other and further relief, general or specific, legal or equitable, to which The Cincinnati Indemnity Company may show it to be justly entitled.

Respectfully submitted,

COX P.L.L.C.

By:  */s/ Lisa Brindle Talbot*
LISA BRINDLE TALBOT
State Bar No. 24040576
ltalbot@coxpllc.com
JENNIFER KELLEY
State Bar No. 24058695
jkelley@coxpllc.com
2200 Post Oak Blvd., Suite 1550
Houston, TX 77056
Telephone: (202) 262-2835
Facsimile:  (469) 340-1884

ATTORNEYS FOR PLAINTIFF
THE CINCINNATI INDEMNITY
COMPANY